**PURER & COMPANY and Phillip Purer, Appellants,**

v.

**AKTIEBOLAGET ADDO and Addo Machine Company, Inc., Appellees.**

No. 22037.

United States Court of Appeals
Ninth Circuit.

March 14, 1969.

As Amended on Denial of Rehearing
May 29, 1969.

874

Joseph W. Fairfield (argued), Ethelyn F. Black, Alfred W. Omansky, Beverly Hills, Cal., for appellants.

G. William Shea (argued), of McCutchen, Black, Verleger & Shea, Los Angeles, Cal., for appellees.

Before HAMLEY and HAMLIN, Circuit Judges, and PLUMMER,* District Judge.

PLUMMER, District Judge:

This action was commenced in the United States District Court for the Central District of California by appellees to obtain a preliminary injunction, a permanent injunction, damages for patent infringement, trademark, infringement and unfair competition, and for costs and attorneys' fees.

The case was tried by the court without a jury. Judgment was entered enjoining appellants from engaging in unfair competition and infringing appellees' patents and awarding appellees the sum of $36,905.17 as reasonable costs and attorneys' fees. From this judgment, a timely appeal was taken.

The United States District Court had jurisdiction under 28 U.S.C.A. § 1332 and 28 U.S.C.A. § 1338. This court has jurisdiction under 28 U.S.C.A. § 1291.

Appellants' first specification of error relates to the ruling of the trial court allowing certain exhibits into evidence over objections. Included in these are certain financial reports of Addo which were admitted into evidence as appellees' Exhibits 3, 4 and 48.

Exhibit 3 is Addo's financial report for 1965. It consists of twenty-three pages apparently printed in the Swedish language with a five-page summary in English. This exhibit was admitted to show that Addo was a world-wide organization.

Gunnar Agrell, the president of Addo, testified without objection to facts which sufficiently established the worldwide nature of Addo's business activities. During the trial, counsel for appellants conceded that Addo was a worldwide organization.

In the absence of a showing that the admission of Exhibit 3 was inconsistent with substantial justice or that appellants' substantial rights were affected, the asserted error must be disregarded.

Exhibit 4 is a summary of Addo's records prepared by the accounting department pursuant to Gunnar Agrell's instructions. Exhibit 48 is a computation of the advertising expenditures of Addo Machine Company for the years 1963 through 1967 prepared at the request of Mr. George Agrell.

Exhibits 4 and 48 were relevant to an issue of fact which remained to be litigated.[1] They were properly admitted

---

* The Honorable Raymond E. Plummer, United States District Judge for the District of Alaska.

1. C.T. p. 541: "24. Whether plaintiffs Addo and Addo Machine, Inc. have at great expense over many years established a complete and successful organization of distributors and retailers of Addo products in the United States."

into evidence. Section 1509, California Evidence Code.[2]

No request was made by appellants for the production of the original records from which the summaries were made. Consequently, the trial court was not called upon to exercise its discretion as to whether or not the records should be produced for inspection. See Baker and Ford Co. v. United States, 363 F.2d 605, 607 (9th Cir. 1966).

Appellants assert that plaintiffs' Exhibits 8, 9, 10, 11, 13, 14 and 16 referred to as the Lindeteves-Jacoberg correspondence, the photographs marked plaintiffs' Exhibits 12a–12h inclusive and 44a, and Exhibits 17, 18 and 43, referred to as the Tokyo-Denki letters, were improperly admitted into evidence. They further assert that as a result thereof there is no evidence to support the court's findings of fact 23, 24, 25, 26, 27, 28, 29, 30, 31 and 50.

Gunnar Agrell, president of Addo, testified in substance and without objection to the following facts. He first heard of Toshiba Adding Machine Model BC–4001 in 1960 or 1961. In 1960, Addo received a brochure of Model BC–4001 from Lindeteves-Jacoberg.

After receiving a letter from Lindeteves-Jacoberg dated December 12, 1962, he went to Stockholm to the Swedish Export Association and asked them to get the information about Japanese firms copying Swedish products. This information was later supplied to him and Addo then decided to go through diplomatic channels through the Swedish Embassy in Tokyo to the Japanese authorities. Addo's decision was made known to Lindeteves-Jacoberg by a letter dated January 11, 1963. A reply was received from Lindeteves-Jacoberg by letter dated May 15, 1963. Addo then decided to buy a Model BC–4001 adding machine and did buy one through Lindeteves-Jacoberg in Japan. On June 28, 1963, Addo received a letter dated June 26, 1963, which had attached or enclosed a letter dated June 13, 1963 from Lindeteves-Jacoberg's Tokyo office to the charges d'affaires of the Embassy of the Kingdom of Sweden at Tokyo.

Addo eventually received from Japan the Model BC–4001 adding machine which had been purchased by Lindeteves-Jacoberg. Mr. Agrell saw the machine when it arrived in Sweden. He inspected it to see whether there was any model number. It was Model 4001.

The machine was taken to Addo's laboratory and photographed on orders from Mr. Agrell. At the same time, photographs were made of an Addo-X 341E. He saw the two machines side by side and inspected the photographs after they were taken. At the trial, Mr. Agrell was able to identify from the photographs which machine was the Toshiba Model BC–4001 and which was the Addo-X 341E although it was difficult to do so because the machines were so similar.

The photographs were then sent to Lindeteves-Jacoberg. Thereafter, Addo received a report from Lindeteves-Jacoberg as to what was done with the pictures. In the report, certain recommendations were made as to what further action Addo should take. By a letter dated April 15, 1964, Lindeteves-Jacoberg forwarded Addo a copy of a report it had received from the Royal Swedish Embassy at Tokyo.

After receiving this document, Addo wrote Tokyo Denki on April 28, 1964 on the subject of Model BC–4001. Mr. Agrell saw this letter before it was sent. No answer was received so in July of 1964 another letter was sent to Tokyo Denki requesting a reply. Mr.

2.  Section 1509 of the California Evidence Code provides: "§ 1509. *Voluminous writings*—Secondary evidence, whether written or oral, of the content of a writing is not made inadmissible by the best evidence rule if the writing consists of numerous accounts or other writings that cannot be examined in court without great loss of time, and the evidence sought from them is only the result of the whole; but the court in its discretion may require that such accounts or other writings be produced for inspection by the adverse party."

Agrell also saw this letter before it was sent.

By a letter dated November 25, 1965, Tokyo Electric Company acknowledged receipt of Addo's letter of April 1964. It is evident from this letter that it is a reply to Addo's letter to Tokyo Denki dated April 8, 1964. The letter refers to Tokyo Electric Company's adding machines Model BC–4001 and BC–4011. It recites that the sale of BC–4001 had been discontinued in May of 1965 and Model BC–4011 had been substituted in its place in April of 1965. A photograph of the substitute machine, Model BC–4011, was enclosed.

The record establishes that Tokyo Electric Co., a subsidiary of Toshiba, was the manufacturer for appellants, and that Purer & Company was sales agent for Tokyo Electric Company.

■ Appellants having failed to raise objection to Mr. Gunnar Agrell's testimony at the trial, the objection is deemed waived. Washington State Bowling Prop. Ass'n v. Pacific Lanes, Inc., 356 F.2d 371, 381 (9th Cir. 1966).

■ The presumption on appeal is that the trial judge disregarded incompetent evidence and relied upon competent evidence. Pursche v. Atlas Scraper & Engineering Co., 300 F.2d 467, 488 (9th Cir. 1961); cert. den. 371 U.S. 911, 83 S.Ct. 251, 9 L.Ed.2d 170; rehearing denied, 371 U.S. 959, 83 S.Ct. 499, 9 L.Ed.2d 507.

■ The letters from Addo to Tokyo Denki were authenticated by the testimony of Gunnar Agrell, and the letter from Tokyo Electric Company was self-authenticating as a reply. See California Evidence Code, Sections 1420 and 1421; Conner v. Zanuzoski, 36 Wash.2d 458, 218 P.2d 879, 883.

Mr. Agrell's undisputed testimony and the exhibits properly admitted into evidence provide substantial evidence in support of the court's findings 23, 24, 25, 26, 27, 28, 29, 30 and 50.

■ The court's finding number 31 is a misstatement, in that the record clearly reflects that Tokyo Electric Co., by its letter of November 24, 1965, did reply to Addo's letter of April 28, 1964. However, whether Addo wrote Toshiba and did or did not receive a reply is immaterial. This fact is not recited in the pretrial conference order as an issue of fact remaining to be litigated and it is not an issue necessary to a determination of this case. In the absence of a showing of prejudice by appellants, this misstatement by the trial court must be disregarded.

Appellants object to the admission of the Dun & Bradstreet report, Exhibit 39, on the ground that it is hearsay and not admissible into evidence.

Gunnar Agrell testified that he first learned that Purer & Company had originally been incorporated as a California corporation under the name of Tokyo Electric Company International when he got the Dun & Bradstreet report sometime in July of 1965.

The pretrial conference order entered December 12, 1966 recites as an admitted fact that defendant Purer & Company is a California corporation organized under the name Tokyo Electric Company International in June 1964, and changed its name to Purer & Company by an amendment of its articles of incorporation filed December 8, 1964.

There is nothing contained in the court's finding 56 that was not testified to by Mr. Agrell and admitted by appellants in the pretrial order. It is presumed that the court's finding was based on the competent evidence in the case.

■ If the court erred in admitting this document, we are convinced from our review of the record that appellants were not prejudiced thereby and the error, if any, was harmless.

■ Plaintiffs' Exhibits 29, 30 and 32 consisted of inter-office correspondence between Gunnar Agrell and his brother George. They were admitted in evidence for the purpose of showing the state of mind of Gunnar Agrell, the

president of Addo, and not for the truth of their contents.

▮ Plaintiffs' Exhibits 53, 54, 55, 56 and 57 are letters reflecting the reaction of Addo machine dealers to literature received from appellants regarding their Tokyo Electric adding machine. These exhibits were not admitted for the truth of the matter stated therein, but for the limited purpose of showing the attitude and state of mind of the dealers under the circumstances.

▮ Appellants have not brought to the court's attention any findings of facts based upon these exhibits. In the absence of such a showing and of a showing that appellants were prejudiced thereby, the assertions must be disregarded.

Appellants' second specification of error relates to the admissions made by defendant Phillip Purer to George Agrell and Carl Gronhagen.

Mr. Agrell testified without objection that he first met Phillip Purer around the middle of September 1965 in New York City. Mr. Purer told him that he had been working with the Toshiba people. In his business relations with Toshiba, he had seen the BC–4001 machine and had expressed interest to Toshiba to import and market that machine in the United States. He stated that Toshiba wasn't [interested] in doing so since they might risk conflict with the patents Addo was holding in the United States. He said that this was the reason he approached Addo in order to obtain the patents to clear the way for the import of the Toshiba machines in the United States. Mr. Agrell suggested to him that if he went around the patent, he could possibly import the machines, but that he could not call it an Addo licensed machine. Mr. Purer acknowledged that that was the problem.

Mr. Gronhagen testified that he contacted Mr. Purer about the first week in September of 1965, and Mr. Purer came to his office. During that meeting, Mr. Purer stated that there was no doubt that the machine was already being man-ufactured at the time that he started negotiations for the license agreement. Mr. Gronhagen's testimony was not objected to nor was he questioned on cross-examination regarding his conversation with Mr. Purer.

▮ Where, as here, the case was tried to the court, it was the province of the court to determine the credibility of witnesses and the weight to be attached to their testimony and the inferences to be drawn therefrom in the same manner that the jury should do in a case tried to a jury.

Mr. Purer was present throughout the trial. If in fact the testimony of the witnesses Agrell and Gronhagen was false, mistaken or incorrect in any respect, Mr. Purer had the opportunity to present his version of the conversations for the court's consideration during the trial.

▮ The admissions of a party made directly by him are admissible in evidence against such party where they are inconsistent with the claim he asserts in the action. The evidence relating to Mr. Purer's admissions was properly admitted by the trial court.

Appellants' third specification of error challenges the correctness of the trial court's finding that Addo was induced to enter the license agreement of April 1, 1965 because of the fraudulent representations made by the appellants.

To support their contentions, appellants present citations setting forth general statements of law relating to the subject of fraud and then state their conclusion that it is obvious that Addo did not rely upon any alleged misrepresentations of Purer in issuing the license agreement.

▮ They next suggest that since the negotiations of the parties which led to the issuance of the license were in writing that the findings of the trial court are not controlling since this court is in as good a position as the trial court to interpret documentary evidence. This court, however has no such power. Randall Foundation, Inc. v. Rid-

dell, 244 F.2d 803, 805 (9th Cir. 1957); Lundgren v. Freeman, 307 F.2d 104, 113–115 (9th Cir. 1962).

■ Appellants then recite their version of the evidence in an attempt to establish the incorrectness of the findings made by the trial court. Unless clearly erroneous, such findings are presumptively correct. United States v. Kintner, 216 F.2d 418, 426 (9th Cir. 1954).

■ It is not incumbent upon appellees to persuade this court that the district court's findings are correct. To the contrary, the appellants must persuade this court that such findings are, as claimed by appellants, clearly erroneous. This court must view the evidence in the light most favorable to the parties who prevailed below. Such parties must be given the benefit of all inferences that may reasonably be drawn from the evidence. The findings of the trial court sitting without a jury must be accepted unless they are clearly erroneous. They cannot be upset if they are supported by substantial evidence. Pacific Queen Fisheries v. Symes, 307 F.2d 700, 706 (9th Cir. 1962).

From our review of the record, we conclude that the trial court's findings relating to the issue of fraud are supported by substantial evidence.

Appellants' fourth specification of error challenges the correctness of the court's findings of fact and conclusions of law with reference to the issue of unfair competition.

The court found that appellants, after notice of the recision of the license agreement, imported into the United States and offered for sale TEC 7001 adding machines which incorporated Addo's patented inventions. That appellants, in September of 1965, falsely represented their adding machine was being manufactured under a license agreement dated April 1965 between Addo and Purer Company. That appellants falsely advertised and represented that the TEC machine had a history of five years top sales experience and over one million satisfied users. At the time appellants made these representations, Addo had manufactured more than one million business machines and used the advertising slogan "Machines for Millions."

From these findings of fact, the court concluded that appellants' importation and sale of adding machines incorporating Addo's patented inventions, after recision of the patent license agreement on July 22, 1965, and their advertisement and representation of the connection between the TEC 7001 and Addo, constituted unfair competition.

■ The court's findings are supported by substantial evidence, and its conclusions of law are supported by the law. Pursche v. Atlas Scraper & Engineering Co., supra; Upjohn Co. v. Schwartz, 246 F.2d 254 (2d Cir. 1957); Stork Restaurant v. Sahati, 166 F.2d 348 (9th Cir. 1948); Hanson v. Triangle Publications, 163 F.2d 74 (8th Cir. 1947); Ford Motor Co. v. Benjamin E. Boone, Inc., 244 F. 335 (9th Cir. 1917); Volkswagenwerk G.m.b.H. v. Frank, 198 F.Supp. 916 (D.Colo.1961).

Appellants' fifth specification of error relates to plaintiffs' second cause of action for trademark infringement.

The second cause of action set forth in the complaint alleges a claim for violation of a registered trademark.

On November 23, 1966, defendants advised plaintiffs in writing that on December 12, 1966 they would move the court for judgment on the second cause of action and for an order directing the Commissioner of Patents to cancel these trademarks on the ground that they were descriptive and non-registerable. On December 12, 1966, plaintiffs orally moved the court that the trademark cause of action be withdrawn. After due deliberation and consideration,

the second cause of action was dismissed by the court. Before this was done, the judge observed that he could not see how the interest of justice would be served by refusing to allow plaintiffs to withdraw their second cause of action in view of the fact that in the course of discovery they had come to the conclusion that plaintiffs would be unable to show that defendants were actually infringing their trademarks.

The granting of a motion by the plaintiffs for voluntary dismissal after the filing of an answer or a motion for summary judgment is reviewable only for abuse of discretion. Blue Mountain Construction Co. v. Werner, 270 F.2d 305 (9th Cir. 1959), cert. den. 361 U.S. 931, 80 S.Ct. 371, 4 L.Ed.2d 354; Johnston v. Cartwright, 355 F.2d 32 (8th Cir. 1966). From our review of the record, we find no abuse of discretion on the part of the trial court.

In their sixth specification of error, appellants contend that this was not a patent infringement case. The first cause of action set forth in the complaint clearly alleges a claim for patent infringement. The answer thereto admits that the letters patent here involved were duly issued by the United States and generally denies all other material allegations. The pretrial conference order of December 12, 1966 recites that the issues of patent infringement and unfair competition are raised in the first and third causes of action of the complaint and in the answer.

The pleadings relating to the first cause of action clearly raise the issue of patent infringement. Although defendant in its answer alleges as an affirmative defense the purported licensing agreement of April 1, 1965, this does not change the legal effect of plaintiffs' claim. The first rule relating to jurisdiction in patent matters is to the effect that a case is within the exclusive federal jurisdiction when it seeks to enforce a patent against an infringer, even though the complaint may show, in anticipation of a defense, the existence of an agreement between the parties relating to the patent. Lear Siegler, Inc. v. Adkins, 330 F.2d 595 (9th Cir. 1964). This being so, the assertion of an agreement in an answer as a matter of defense would not remove the claim from the exclusive federal jurisdiction.

When the pleadings were closed, it was incumbent upon plaintiffs, in order to prevail, to prove (1) the validity of their patents, and (2) that they were infringed.

The admission by defendants in their answer that the patents were duly issued by the United States gave rise to a presumption of validity which could only be overcome by clear and convincing proof to the contrary. Neff Instrument Corp. v. Cohu Electronics, Inc., 298 F.2d 82 (9th Cir. 1962).

The presumption of validity and the concession made by appellants in the pretrial conference order did not remove the issue of validity from the case. It merely made that issue one which was conceded and required no proof. The question of infringement remained as a factual issue to be determined by the court. Reynolds-Southwestern Corp. v. Dresser Industries, Inc., 372 F.2d 592 (5th Cir. 1967).

In order to constitute infringement, there must exist substantial identity of function, means, and results. Pursche v. Atlas Scraper & Engineering Co., *supra,* 300 F.2d p. 483. An infringing device must perform substantially the same function or accomplish a substantially identical result by substantially identical means, and the principle or mode of operation must be the same. Reynolds-Southwestern Corp. v. Dresser Industries, Inc., *supra,* 372 F.2d p. 595.

■ The court's comprehensive findings of fact relating to the issue of patent infringement are supported by substantial evidence, and these findings support the court's conclusion of law that defendants' importation and sale of adding machines incorporating Addo's patented inventions constituted a patent infringement *ab initio*.

Appellants object to the trial court's award of attorneys' fees and costs to appellees. Section 285 of Title 35 U.S. C.A. provides that the court in exceptional cases may award reasonable attorneys' fees to the prevailing party.

■ In patent cases, attorneys' fees should be awarded only in extraordinary cases. The exercise of discretion in favor of an allowance of attorneys' fees should be based upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of equal force, which makes it grossly unjust that the prevailing party be left to bear the burden of his own counsel fees. Rohr Aircraft Corporation v. Rubber Teck, Inc., 266 F.2d 613, 624 (9th Cir. 1959); Park-In Theatres v. Perkins, 190 F.2d 137, 142 (9th Cir. 1951).

■ In this case, the trial court found that appellants had been guilty of fraud in obtaining the patent license and, after the patent license had been rescinded, knowingly continued their patent infringement. The conclusion that appellants were guilty of bad faith and inequitable conduct was fully justified by the evidence before the trial court. The trial court specifically found that appellants' conduct made this an exceptional case in which an award to Addo of its attorneys' fees and expenses should be granted.

■ ■ The amount of an award of attorneys' fees is addressed to the sound discretion of the court. Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp., 267 F.Supp. 726, 789 (S.D.Cal.1966). Where the district court has clearly stated the basis for its award of attorneys' fees, this court may not interfere with the district court's exercise of discretion except where there is an abuse of discretion amounting to caprice or an erroneous conception of law on the part of the trial judge. Shingle Product Patents v. Gleason, 211 F.2d 437, 441 (9th Cir. 1954); Dubil v. Rayford Camp & Co., 184 F.2d 899, 903 (9th Cir. 1950).

■ Appellants also object to the taxing of costs to include the actual travel expenses incurred in the taking of a deposition in Sweden and in bringing witnesses from Sweden and New York to California. The former rule in the Ninth Circuit has been that travel expenses are not allowed for travel beyond the area in which a subpeona of the trial court could be effectively served. Kemart Corp. v. Printing Arts Research Lab., Inc., 232 F.2d 897, 902, 57 A.L.R. 2d 1234 (9th Cir. 1956). However, the Supreme Court has more recently held that the taxation of actual travel costs is within the discretion of the trial court. Farmer v. Arabian American Oil Co., 379 U.S. 227, 232, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964). Exercising its discretion, the trial court concluded that the actual travel costs in this case were taxable costs to be assessed against appellants.

The trial court's findings and conclusions with reference to costs and attorneys' fees are supported by the record.

We have reviewed the orders of the trial court denying defendants' motion to compel plaintiffs to fully and completely answer questions on interrogatories, denying defendants' motion to preclude the testimony of Carl Gronhagen, denying defendants' motion for judgment on the second cause of action, granting plaintiffs leave to withdraw their second cause of action, and all other errors specified by appellants. Having done so, we find the asserted errors to be without merit.

Judgment affirmed.