995 F.2d 232
 RICO Bus.Disp.Guide 8312
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
RAINIER NATIONAL BANK, Plaintiff-Appellee,
v.
Mark HARTSTEIN, Defendant-Appellant,
and
Lady's Legs, et al., Defendants.
 No. 91-36164.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 5, 1993.*
Decided May 25, 1993.
 
 Before BOOCHEVER, THOMPSON and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Rainier National Bank ("Rainier"), now known as Security Pacific Bank Washington, brought federal and state claims against Mark Hartstein and other defendants to recover losses incurred when the defendants, including Hartstein, illegally processed credit card charges through the Lady's Legs merchant account at Rainier. After a bench trial in which Hartstein appeared pro se, the district court entered judgment against him for $486,134.19 for violation of the Racketeer Influenced and Corrupt Organizations Statute ("RICO"), the Washington Criminal Profiteering Act, and the Washington Consumer Protection Act, and for fraud, breach of contract, inducing breach of contract, interference with contractual relations, conversion and negligence. Hartstein appeals.
 
 
 3
 The district court had jurisdiction over the federal claim under 18 U.S.C. § 1331 and jurisdiction over the state claims under the doctrine of pendent jurisdiction. We have jurisdiction over this timely appeal under 28 U.S.C. § 1291. We affirm.
 
 DISCUSSION
 A. Personal Jurisdiction
 
 4
 The district court for the Western District of Washington properly exercised personal jurisdiction over Hartstein, a Florida resident.
 
 
 5
 When a district court makes findings on disputed facts regarding jurisdiction, we accept those findings unless clearly erroneous and review de novo the district court's ruling regarding the existence of personal jurisdiction based on those findings. Hunt Wesson Foods, Inc., v. Supreme Oil Co., 817 F.2d 75, 78, n. 2 (9th Cir.1987). When, as here, a defendant challenges a judgment entered against him on the merits, the plaintiff bears the burden of proving by a preponderance of the evidence facts which substantiate the exercise of jurisdiction by the district court. Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F.2d 1392, 1396 & n. 1 (9th Cir.1986). In order to establish personal jurisdiction, Rainier must show the forum state's jurisdictional statute confers personal jurisdiction and that the exercise of jurisdiction accords with federal constitutional principles of due process. See Pacific Atlantic Trading Co. v. M/V Main Express, 758 F.2d 1325, 1327 (9th Cir.1985).
 
 1. Washington's Long-Arm Statute
 
 6
 In this case, Washington's jurisdictional statute provides the district court with personal jurisdiction over Hartstein. Washington's long-arm statute provides, in relevant part:
 
 
 7
 (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:
 
 
 8
 (a) The transaction of any business within this state;
 
 
 9
 (b) The commission of a tortious act within this state; ....
 
 
 10
 Wash.Rev.Code § 4.28.185 (1988).
 
 
 11
 The district court found Hartstein "tortiously interfered with the contractual relationship between Lady's Legs and Plaintiff [Rainier]," two entities doing business in Washington, which caused Rainier damage. District Court Judgment at 3. The district court also found Hartstein committed the torts of fraud and negligent misrepresentation in relation to Lady's Legs, and acquired and maintained an interest in and control of the enterprise known as Lady's Legs. District Court Judgment at 3, 6.
 
 
 12
 The district court's findings, which are not clearly erroneous, satisfy Washington Revised Code § 4.28.185(1)(a) and (b). Under Washington law, the district court had personal jurisdiction over Hartstein as to any cause of action arising from his commission of a tortious act within Washington and his transaction of business within Washington. See Grange Insurance Ass'n v. State of Washington, 757 P.2d 933, 936 (Wash.1988) ("When an injury occurs in Washington, it is an inseparable part of the 'tortious act' and that act is deemed to have occurred in this state for purposes of the long-arm statute."), cert. denied, 490 U.S. 1004 (1989).
 
 2. Due Process
 
 13
 Due process requires a nonresident defendant to have certain minimum contacts with the forum state so that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." International Shoe v. Washington, 326 U.S. 310, 316 (1945). Rainier does not suggest Hartstein's activities in Washington are sufficiently substantial and continuous to justify general jurisdiction. See Pacific Atlantic, 758 F.2d at 1327. Rather, Rainier maintains Hartstein's contacts with Washington are sufficient for Washington to assert specific jurisdiction.
 
 
 14
 We have adopted the following three-pronged approach to determine when a state may exercise specific jurisdiction over a nonresident defendant without violating due process:
 
 
 15
 1. The nonresident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.
 
 
 16
 2. The claim must be one which arises out of or results from the defendant's forum-related activities.
 
 
 17
 3. Exercise of jurisdiction must be reasonable.
 
 
 18
 Brand, 796 F.2d at 1073; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-78 (1985); Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102 (1987).
 
 
 19
 The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or the unilateral activity of another party. Burger King, 471 U.S. at 475. The Supreme Court has noted that when a defendant has deliberately engaged in significant activities within a state or has created continuing obligations between himself and residents of the forum state, jurisdiction may not be avoided merely because the defendant did not physically enter the forum state. Id. at 476. The Supreme Court has recognized that "a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviat[ing] the need for physical presence within a State in which business is conducted." Id; see also Bourassa v. Desrochers, 938 F.2d 1056 (9th Cir.1991) (a single phone call to California was a sufficient act or transaction to give California district court jurisdiction).
 
 
 20
 Hartstein purposefully availed himself of the privilege of conducting business in Washington. The record indicates: (1) Hartstein had over 300 telephone conversations with George Moore, a resident of Washington, instructing Moore how to set up the factoring arrangement, see Transcript of Proceedings on August 19, 1991 ("Transcript") at 53, 55-57 ("Mark Hartstein called me on the phone, and told me how to set up the merchant accounts"), and at 60, 87 ("I have talked to him [Hartstein] over 300 times"); (2) Hartstein faxed credit card numbers and authorization numbers to Moore in Washington for factoring, see Transcript at 57-59 (Moore, in response to being asked, "can you identify those as the actual fax sheets that you received from Mr. Hartstein in this matter?", answered, "[t]hese are the actual sheets, some of them.");[1] and (3) Hartstein instructed Moore to wire the funds from Washington to an out of state location, see Transcript at 55-56, 64-65 ("He [Hartstein] gave me [Moore] the name of this bank in Tampa, and the account, a number to which the funds were to be sent.").
 
 
 21
 Rainier's federal and state claims resulted from Hartstein's forum-related activities. Hartstein's phone calls, faxes, and instructions to Washington residents to carry out his plans resulted in the illegal processing of credit card charges through the Lady's Legs merchant account at Rainier.
 
 
 22
 Because Hartstein purposefully availed himself of the privilege of conducting business in Washington, Hartstein has the burden of presenting a compelling case that other considerations exist to render Washington's exercise of jurisdiction unreasonable. See Burger King, 471 U.S. at 477. We examine seven factors to determine whether exercise of jurisdiction is reasonable: existence of an alternative forum; burden on the defendant; convenience and effectiveness of relief for the plaintiff; most efficient judicial resolution of the dispute; conflict with sovereignty of the defendant's state; extent of purposeful interjection; and the forum state's interest in the suit. Brand v. Menlove Dodge, 796 F.2d 1070, 1075 (9th Cir.1985).
 
 
 23
 Hartstein has not met his burden of presenting a compelling case that Washington's exercise of personal jurisdiction over him violated due process. While Rainier could have filed its action in Florida, and Hartstein may have more easily defended the suit there, Washington was clearly more convenient for Rainier. Washington was the location of key witnesses, the location where much of the alleged tortious activity occurred, and the location where Rainier was injured. "The site where the events in question took place or where most of the evidence is located usually will be the most efficient forum." Brand, 796 F.2d at 1075. Furthermore, Hartstein has not indicated Washington's jurisdiction would conflict with Florida's sovereignty, although such concerns can often be accounted for by choice of law rules. Finally, Washington has a strong interest in the suit because Washington companies were allegedly harmed by Hartstein.
 
 B. Preclusion of Defendant's Testimony
 
 24
 In a pretrial deposition, Hartstein asserted his Fifth Amendment privilege against self-incrimination in response to questions concerning his employment, his knowledge of and association with World Marketing Concepts ("WMC"), his knowledge of whether WMC ever did business in Washington, his knowledge of World Travel Concepts ("WTC"), and his knowledge of and advice to Washington resident George Moore.[2] At trial, Rainier objected to Hartstein testifying about his lack of business contacts in the State of Washington. The district court sustained the objection and precluded this testimony.
 
 
 25
 The district court did not abuse its discretion or render Hartstein's invocation of his Fifth Amendment privilege too "costly" by precluding Hartstein's testimony regarding his affirmative defense of lack of jurisdiction. See Campbell v. Gerrans, 592 F.2d 1054, 1057 (9th Cir.1979) (a person invoking the Fifth Amendment is "to suffer no penalty for his silence"--a "penalty" is "the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly' ").
 
 
 26
 The cases holding a civil litigant was impermissibly penalized for asserting the Fifth Amendment in pretrial discovery involve situations where the litigant's entire suit was dismissed by the district court without any consideration of whether less burdensome remedies were available to prevent unfairness to the party deprived of discovery by the assertion of the privilege.[3] See, e.g., Wehling, 608 F.2d at 1088 (when a plaintiff's silence is constitutionally guaranteed, dismissal of civil action is appropriate only when other, less burdensome remedies would be ineffective means of preventing unfairness to defendant); Campbell, 592 F.2d at 1054 (district court abused discretion in dismissing the case due to Fifth Amendment plea during discovery).
 
 
 27
 In the present case, the district court did not grant summary judgment or enter a directed verdict for Rainier, but rather employed the "less burdensome" vehicle of preclusion of Hartstein's testimony to prevent unfairness to Rainier. The district court appropriately balanced Hartstein's right to assert his Fifth Amendment privilege with Rainier's right to obtain discovery of nonprivileged information.
 
 
 28
 Evidence presented at trial indicates opposing counsel did not threaten Hartstein with criminal penalties to coerce him to invoke the privilege, but rather Hartstein invoked the privilege because of a pending FBI investigation of WTC. The district court also received evidence from Hartstein's deposition, in which Rainier warned Hartstein and Hartstein's counsel that if at any time Hartstein decided not to invoke the Fifth Amendment privilege, Hartstein should give Rainier "due notice of that so that we can have adequate opportunity to make discovery prior to the trial date.... [or] we will move to exclude any evidence at trial." Transcript at 6. Hartstein never notified Rainier prior to trial of his intention to testify.
 
 
 29
 Hartstein argues that the deposition questions concerning his employment, his knowledge of and association with WMC, his knowledge of whether WMC ever did business in Washington, his knowledge of WTC, and his knowledge of and advice to Washington resident George Moore involved separate legal issues unrelated to jurisdictional questions. He contends he did not refuse to answer jurisdictional questions, and thus he should not have been precluded from presenting evidence on the jurisdictional issue at the time of trial. We reject this argument. Hartstein's assertion of the Fifth Amendment at his deposition did apply to jurisdictional questions.[4] If Hartstein had not asserted his Fifth Amendment privilege, Rainier might have ascertained Hartstein's position on the controverted issue of jurisdiction. Furthermore, if Hartstein had not asserted the privilege, Rainier could have discovered Hartstein's association with WMC and WTC and WMC's and WTC's business operations in Washington, thereby establishing Hartstein's business contacts in Washington. In these circumstances, preclusion was the price of, not a penalty for, Hartstein's invocation of the Fifth Amendment. The district court did not err in precluding Hartstein's testimony.
 
 C. Sufficiency of Evidence
 
 30
 Hartstein alleges "[a]lmost all of the testimony relied upon to support the judgment below contains ... unsubstantiated hearsay" and "does not equate to substantial competent evidence." Hartstein's argument is, in effect, that the district court erred in entering judgment against him because its evidentiary rulings were an abuse of discretion and its factual findings were clearly erroneous.
 
 1. Evidentiary Rulings
 
 31
 Evidentiary rulings are reviewed for an abuse of discretion and will not be reversed absent some prejudice. McGonigle v. Combs, 968 F.2d 810, 825 (9th Cir.), cert. dismissed, 113 S.Ct. 399 (1992). The presumption on appeal is that the district judge disregarded incompetent evidence and relied upon competent evidence. Purer & Co. v. Aktiebolaget Addo, 410 F.2d 871, 876 (9th Cir.), cert. denied, 396 U.S. 834 (1969).
 
 
 32
 Hartstein contends that William S. Cookson's testimony regarding Hartstein's alleged improper conduct should not have been considered by the district court because Cookson's statements were not based on his personal knowledge. This argument is meritless. An examination of the record reveals Cookson testified only to the investigation of consumer complaints by his office, of which he, as the lead investigator, had personal knowledge.
 
 
 33
 Hartstein also argues the district court should have sustained his objection to Cookson reading excerpts of the investigative report because the report was prepared in anticipation of litigation. We disagree. The report was prepared by the Consumer Protection Division, a state agency, pursuant to a duty imposed by law. The report was not introduced to prove the truth of the matters asserted in it, but rather to demonstrate Hartstein's business activity in Washington. See Fed.R.Evid. 801(c) (hearsay ... is offered to prove the truth of the matter asserted); 803(8) (public records and reports).
 
 
 34
 Hartstein argues the district court erred in overruling his objection to the introduction of the consent decree he entered into with the State of Washington because the decree states that it shall not be construed as an admission of any violation. The district court did not abuse its discretion by overruling the objection. The decree was not introduced as an admission of liability, but rather as evidence of enforcement activity, which tends to make the presence of a pattern of activity more likely.
 
 
 35
 Hartstein argues George Moore's testimony was "infested with uncorroborated, unreliable hearsay." Hartstein did not object at trial to the alleged hearsay statements. Thus, his hearsay objection is waived. Purer & Co., 410 F.2d at 876 (where appellants failed to object to testimony at trial, objection deemed waived).
 
 2. Factual Findings
 
 36
 We review a district court's findings of fact under the clearly erroneous standard. Fed.R.Civ.P. 52(a); Securities & Exchange Comm'n v. American Principals Holding, Inc., 962 F.2d 1402, 1405 (9th Cir.), cert. denied, 113 S.Ct. 210 (1992). The clearly erroneous standard applies to findings the district court adopts from proposed findings submitted by the parties. Anderson v. Bessemer, 470 U.S. 564, 572 (1985).
 
 
 37
 Special deference is paid to a district court's credibility findings. Id. at 573. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Id. at 573-74; see also Service Employees Int'l Union v. Fair Political Practices, 955 F.2d 1312, 1317, n. 7 (9th Cir.), cert. denied, 112 S.Ct. 3056 (1992).
 
 
 38
 Hartstein argues there was no competent evidence presented to establish several propositions, including: "Appellant [Hartstein] knew of the terms of the Lady's Legs Merchant Agreement with Appellee [Rainier];" "Appellant implemented the processing of WMC's transactions;" Appellant "prepared, maintained, submitted or verified telefax records or authorization numbers to Lady's Legs;" "Appellant repudiated ... promises of his own or of WMC;" "Appellant contributed to ... fraud or tortious acts with Appellee;" and Appellant "committed ... the 'predicate acts' which RICO and the Washington Consumer Protection Act require to establish liability."
 
 
 39
 Hartstein, like the appellants in Purer & Co., "recite[s] [his] ... version of the evidence in an attempt to establish the incorrectness of the findings made by the trial court." Purer & Co., 410 F.2d at 878. He has not established that the district court's factual findings are clearly erroneous.
 
 D. Attorney Fees
 
 40
 Security Pacific, formerly known as Rainier, seeks attorney fees on appeal pursuant to RICO, 18 U.S.C. § 1962 et seq.; the Washington Criminal Profiteering Act, Wash.Rev.Code § 9A.82.010 et seq.; and the Washington Consumer Protection Act, Wash.Rev.Code § 19.86.010, et seq. Each of these statutes provides for recovery of reasonable attorney fees. 18 U.S.C.A. § 1964(c) (West 1993); Rosario v. Livaditis, 963 F.2d 1013 (7th Cir.1992), reh'g en banc denied, cert. denied, --- U.S. ----, 113 S.Ct. 972 (1993); Wash.Rev.Code § 9A.82.100(1)(a) (West 1993); Wash.Rev.Code § 19.86.090 (West 1993); Wilkinson v. E.M. Smith, 639 P.2d 768 (Wash.) (Consumer Protection Act authorizes award of attorney fees on appeal), review denied, 97 Wash.2d 1023 (1982).
 
 
 41
 Pursuant to the above-referenced statutes, Security Pacific is entitled to recover reasonable attorney fees for this appeal. We remand this case to the district court to make an appropriate award of such fees.
 
 CONCLUSION
 
 42
 The district court's judgment against Hartstein is affirmed. The case is remanded to the district court to award Rainier an appropriate amount for its attorney fees on appeal.
 
 
 43
 AFFIRMED and REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 On appeal, Hartstein claims that there is insufficient evidence to establish that he sent the faxes and that he presented evidence indicating he was not involved with the faxes at all. However, the district court found otherwise. See District Court Judgment at 1-2 (referring to "the facsimile transmissions prepared by Mark Hartstein"). In light of the testimony of George Moore, this finding is not clearly erroneous
 
 
 [2]
 See infra note 4
 
 
 [3]
 We agree with the Fifth Circuit that the analysis of whether a civil litigant is penalized for invoking the Fifth Amendment does not depend on whether the civil litigant is a plaintiff or a defendant. See Wehling v. Columbia Broadcasting System, 608 F.2d 1084, 1089 n. 10 (5th Cir.1979), reh'g denied, 611 F.2d 1026 (1980)
 
 
 [4]
 The following excerpts illustrate Hartstein's repeated invocation of the Fifth Amendment at his deposition:
 Q. Are your currently employed, Mr. Hartstein?
 A. On the advice of counsel, I respectfully decline to answer the question on the grounds that the answer may tend to incriminate me in violation of my constitutional rights as provided by the Fifth and other amendments to the U.S. Constitution.
 Deposition of Mark Hartstein ("Deposition") at 4.
 Q. Are you currently an officer, director or shareholder of any corporation?
 A. I could read this again, but to save time, I will just say I take the Fifth Amendment.
 Deposition at 5.
 MR. ADOLPH [Rainier's counsel]: ... I just want to give you due notice that if at any point in time in the proceeding you change your mind and decide not to invoke the Fifth Amendment privilege, I want to impress upon you the necessity to give us due notice of that so that we can have adequate opportunity to make discovery prior to the trial date.
 MR. GOLD [Hartstein's counsel]: I have no problem with that.
 MR. ADOLPH: And if you do not give us adequate time to do discovery, we will move to exclude any evidence at trial.
 Deposition at 6.
 Q. Mr. Hartstein, have you ever been involved as an officer, director or shareholder of a corporation called World Marketing Concepts, I believe, Incorporated doing business as World Travel Concepts?
 A. I take the Fifth Amendment.
 * * *
 Q. Who formed World Marketing Concepts?
 A. I take the Fifth Amendment.
 Q. Could you identify who the principals of World Marketing Concepts are?
 A. I take the Fifth Amendment.
 Deposition at 7.
 Q. Would you tell me where all of the business records of World Marketing Concepts are currently stored.
 A. I decline to answer as provided by the Fifth Amendment.
 Deposition at 9.
 Q. Would you describe how World Travel Concepts was organized.
 A. I decline to answer as provided by the Fifth Amendment.
 Q. Would you tell me how World Travel Concepts marketed its travel club memberships?
 A. I decline to answer as provided by the Fifth Amendment.
 Q. Can you tell me who, what principals or employees were involved in marketing of travel club memberships?
 A. I decline to answer as provided by the Fifth Amendment.
 * * *
 Q. Have you ever used brokers to factor credit card drafts which were obtained by World Marketing in its business operations?
 A. I decline to answer as provided by the Fifth Amendment.
 Deposition at 14-15.
 Q. Do you know who George Moore is?
 A. I decline to answer as provided by the Fifth Amendment.
 Deposition at 16.
 Q. Did you ever advice [sic] George Moore of any estimated charge-back rate for World Marketing charges?
 A. I decline to answer as provided by the Fifth Amendment.
 Deposition at 18-19.
 Q. Did World Marketing Concepts ever do business in the State of Washington?
 A. I decline to answer based on my Fifth Amendment.
 Q. This complaint, in Paragraphs 8 and 9 and 10, there is a description that World Marketing Concepts established booths at the Wanatchee Gift Show, the Monroe Home Show, the Tacoma Home and Garden Show, the Seattle International Sportmen's Exhibition and the Tacoma Dream Boat Show.
 Did World Marketing Concepts, in fact, establish booths offering a vacation drawing or vacation offers at those locations?
 A. I decline to answer based on my Fifth Amendment.
 Deposition at 22-23.
 MR. ADOLPH: ... I will give you adequate warning at this point in time that if we do not receive adequate discovery opportunities in answer to these questions, we will move to exclude any defenses or any evidence that would constitute a defense at the time ... of trial, so although you certainly have every opportunity and right to take a privilege objection, Rainier is not going to have its rights of discovery forfeited, so I guess there is a price to pay. So if ever at any point in time you desire to withhold the privilege or change your answers, you should do so with adequate notice because I am giving you warning now for the third time that we will move to exclude or strike responsive pleadings upon which we have not had the opportunity to d[o] document or deposition discovery.
 MR. GOLD: If his position changes, we will let you know.
 Deposition 28-29.