T.C. Memo. 2005-293

UNITED STATES TAX COURT

NATIONAL PARALEGAL INST. COALITION, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22543-04X.               Filed December 22, 2005.

        P, a nonprofit corporation, filed two successive
applications with R for a determination of tax exempt
status, Form 1023, Application for Recognition of
Exemption under Section 501(c)(3) and Form 1024,
Application for Recognition of Exemption under Section
501(a).  P seeks declaratory relief as to its
qualification for exemption based upon R's failure to
make a determination.

        Held:  P failed to exhaust its administrative
remedies, a jurisdictional prerequisite to declaratory
proceedings in the Tax Court relating to the status of
an organization under sec. 501(c)(3), I.R.C., as
required by sec. 7428, I.R.C.  Therefore, jurisdiction
of this Court is not available.

Arthur Carson (an officer), for petitioner.

Helen F. Rogers, for respondent.


MEMORANDUM OPINION

NIMS, Judge:  Petitioner brought an action for a declaratory judgment pursuant to section 7428 and Rule 211 on the ground that respondent had failed to determine whether petitioner qualifies as an organization exempt from taxation under section 501(a), (c)(3) and (4).  Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code.  This case is before us on respondent's motion to dismiss for lack of jurisdiction on the ground that petitioner did not exhaust its administrative remedies pursuant to section 7428(b)(2).

This case is submitted for decision on a comprehensive stipulation of facts, which is incorporated herein by this reference.

## Background

Petitioner, National Paralegal Inst. Coalition, was organized as a nonprofit corporation in Texas on March 29, 2001.  On January 11, 2002, it submitted a Form 1023, Application for Recognition of Exemption Under Section 501(c)(3)(petitioner's

Form 1023 and Form 1024, referred to infra, are hereinafter referred to individually as well as collectively as the application).

Respondent, by letter dated April 19, 2002 (the April 19, 2002, letter), informed petitioner that its Form 1023 did not contain sufficient information to enable a determination of qualification for exemption under section 501(c)(3). Respondent requested that petitioner augment certain application disclosures to provide more comprehensive details concerning its activities, membership, and any compensation arrangements to which it may be subject. The April 19, 2002, letter also stated that, based upon preliminary review, petitioner's statutory exemption status appeared more akin to organizations qualifying under section 501(c)(4) or (6) than to those under section 501(c)(3). As a result, respondent advised that petitioner would be permitted to submit a Form 1024, Application for Recognition of Exemption Under Section 501(a), for concurrent consideration with petitioner's Form 1023.

On May 31, 2002, having received no response to the April 19, 2002, letter, respondent notified petitioner that its application was no longer under consideration. Petitioner was granted an additional 90 days to submit a new Form 1023 for resumption of administrative review at no additional charge.

Petitioner, in a letter dated June 18, 2002, supplemented its Form 1023 disclosure to conform to the information requests contained in the April 19, 2002, letter. Petitioner, by that same correspondence, notified respondent of its intention to submit a Form 1024 for joint processing with petitioner's Form 1023. Petitioner submitted the Form 1024 on July 8, 2002.

On September 27, 2002, respondent sent petitioner a letter (the September 27, 2002, letter) containing 31 enumerated items outlining various insufficiencies and disparities regarding petitioner's Form 1023 and Form 1024. The identified inadequacies concerned, among other things, certain provisions in petitioner's articles of incorporation as well as representations in the application concerning petitioner's fundraising activities and sources of financial support, the composition of its membership and the nature of its operations. The September 27, 2002, letter also stated that, if respondent were to determine that petitioner otherwise qualified as an organization described in section 501(c)(3), the extensive organizational control petitioner's chairman apparently possessed would render it a private foundation. The September 27, 2002, letter expressly imposed a 30-day deadline for petitioner to respond.

On November 18, 2002, respondent sent a letter to petitioner noting that the response deadline to the September 27, 2002, letter had lapsed with no communication having been received, and

that respondent would defer any action on the application until November 28, 2002. On December 9, 2002, following the expiration of the extended deadline, petitioner requested by letter an additional 10-day period to respond. On December 18, 2002, in presumably intersecting mailings, both respondent and petitioner sent each other letters of even date: respondent notified petitioner that its application was administratively closed, although the application review would be reopened without an additional user fee if the requested information enumerated in the September 27, 2002, letter was submitted within 90 days. Petitioner's correspondence provided additional information correlating to the itemized requests in the September 27, 2002, letter.

On December 31, 2002, respondent sent petitioner a letter (the disputed letter) containing a litany of particular insufficiencies outstanding in petitioner's application, which included, among other things, conflicts inherent in its governance structure denoting private foundation status and petitioner's failure to adopt related prophylactic provisions in its organic documents, as well as information about petitioner's fundraising activities, membership details, and operations. The shortcomings listed in the disputed letter reflect respondent's review and assimilation of petitioner's responses to the September 27, 2002, letter included in its letter of December 18,

2002.  Petitioner was provided a 30-day response period, at the expiration of which its application would be administratively closed and a new user fee would be charged to resume processing. Petitioner denies that it received the disputed letter.

On August 31, 2004, petitioner sent a letter of protest to respondent (the August 31, 2004, letter) concerning the status of its application and requesting Appeals Office consideration.  In the August 31, 2004, letter, petitioner supplied additional information corresponding in substance to, and following the sequence and arrangement of, the enumerated inadequacies detailed in the disputed letter.  The August 31, 2004, letter does not expressly reference the disputed letter, nor does it contain identical numbering, but its particular content and organization reflect the fact that it was intended as a response to the disputed letter.  For example, item 21 of the disputed letter requires that petitioner provide a copy of a presentation entitled:  "Alleviating Recidivism Among Prisoners:  China and Texas."  In comparison, item 19 of the August 31, 2004, letter states:  "the Presentation is called: 'Alleviating Recidivism among Prisoners', where China as well as Texas Exploits its Prisoner's Labor.  (The question was presented wrong in the request for additional information.)"

Following correspondence from petitioner dated October 4, 2004, regarding the status of its preceding administrative

protest, respondent informed petitioner by letter on November 10, 2004, that its application had been closed because the August 31, 2004, letter exceeded the specified deadline.

## Discussion

Jurisdiction, vested in this Court to provide declaratory relief with respect to the qualification of an organization as an exempt organization described in either section 501(c)(3) or section 170(c)(2), is circumscribed to those instances in which we have determined that the organization has exhausted its administrative remedies. Sec. 7428(b)(2); see Am. New Covenant Church v. Commissioner, 74 T.C. 293, 300 (1980); B.H.W. Anesthesia Found. v. Commissioner, 72 T.C. 681, 682 n.2 (1979).

The exhaustion of administrative remedies obligation set forth in section 7428(b)(2) is predicated on the filing of a "substantially completed" application within the meaning of section 601.201(n)(7)(i), Statement of Procedural Rules, and "the timely submission of all additional information requested to perfect" such application. Sec. 601.201(n)(7)(iv)(a) and (b), Statement of Procedural Rules. (This requirement is also borne out in the legislative history of section 7428. See H. Rept. 94-658, at 267-268 (1975), 1976-3 C.B. (Vol. 2) 695, 979-980; S. Rept. 94-938, at 590 (1976), 1976-3 C.B. (Vol. 3) 49, 628.) As delineated, a substantially completed application entails, among other things, the submission of a proposed budget, current

balance sheet, statement of proposed activities, and description of anticipated receipts and contemplated expenditures. Sec. 601.201(n)(7)(i), Statement of Procedural Rules; see also Rev. Proc. 90-27, 1990-1 C.B. 514. Additionally, other procedural regulations mandate that an organization "fully describe the activities in which it expects to engage, including the standards, criteria, procedures, or other means adopted or planned for carrying out the activities; the anticipated sources of receipts; and the nature of contemplated expenditures." Sec. 601.201(n)(1)(ii), Statement of Procedural Rules.

The facts stipulated support a conclusion that petitioner has not exhausted its administrative remedies, and therefore, jurisdiction is not available. As elaborated on below, petitioner's belated responses to respondent's inquiries in the course of processing its application evince petitioner's failure to "[complete] the normal progression through administrative channels," B.H.W. Anesthesia Found. v. Commissioner, supra, at 682 n.2, or to "demonstrate that progress * * * [was] severely hampered due to causes beyond its control," Prince Corp. v. Commissioner, 67 T.C. 318, 328 (1976) (finding failure to exhaust administrative remedies in the context of section 7476(b)(3), the counterpart to section 7428(b)(2) in the area of retirement plans).

Petitioner's failure to submit a substantially completed application in conformance with respondent's regulatory prescriptions precluded a determination with regard to its qualification for exempt status. Respondent's abiding requests for additional information, particularly the April 19, 2002, letter, September 27, 2002, letter, and the disputed letter, were sufficiently timely. Petitioner's dilatory responses in accommodating respondent's requests constituted a failure to proceed with due diligence. Petitioner responded to the April 19, 2002, letter on June 18, 2002, only after an exhortative notice from respondent was sent on May 31, 2002. Petitioner's belated response to the September 27, 2002, letter, on December 18, 2002, occurred well after the lapse of respondent's imposed and extended deadline for maintaining the application under active consideration of November 28, 2002. Finally, petitioner's deferment in responding to the disputed letter for more than 18 months caused its application to languish and occasioned respondent's decision to ultimately cease consideration of the matter.

Petitioner contends that it complied with all requests for additional information, and that respondent discontinued the correspondence following petitioner's submission of requested information on December 18, 2002. Inherent in the August 31,

2004, letter, however, is an implicit, if not overt, acknowledgment of petitioner's receipt of the disputed letter, belying its contention to the contrary.

Our finding presuming delivery of the disputed letter is based on an extension of the knowledge principle, which underlies rule 901(b)(4) of the Federal Rules of Evidence and the related so-called reply letter doctrine, to this circumstance.  See generally John W. Strong et al., McCormick on Evidence, sec. 225 (5th ed. 1999).  Rule 901(b)(4) of the Federal Rules of Evidence provides for the authentication of a written document if its substance, content, or other distinctive characteristics, analyzed in conjunction with other circumstantial evidence, is indicative of authorship.  One application of such general method of authentication is the reply letter doctrine, which was relied on in Winel v. United States, 365 F.2d 646, 648 (8th Cir. 1966), in holding:  "It has long been recognized that one of the principal situations where the authenticity of a letter is provable by circumstantial evidence * * * is where it can be shown that the letter was sent in reply to a previous communication.  * * * In the instant case the inherent nature of the communication makes it absolutely certain that it is a reply communication."  See also United States v. Henry, 164 F.3d 1304, 1309 (10th Cir. 1999); Purer & Co. v. Aktiebolaget Addo, 410 F.2d 871, 875 (9th Cir. 1969).

The reply letter doctrine, applying the general dictates of the knowledge principle in rule 901(b)(4) of the Federal Rules of Evidence, has been utilized to authenticate the source of reply correspondence by examining indicia therein of its purported author's knowledge of referenced or acknowledged prior correspondence.  See <u>Winel v. United States</u>, <u>supra</u> at 648; see also <u>United States v. Henry</u>, <u>supra</u> at 1309; <u>Purer & Co. v. Aktiebolaget Addo</u>, <u>supra</u> at 875.  Analogously, circumstantial evidence involving the responsive nature of petitioner's subsequent August 31, 2004, letter supports the inference here that petitioner received the prior disputed letter.

Accordingly, we shall grant respondent's motion to dismiss this case for lack of jurisdiction.

To reflect the foregoing,

<u>An order of dismissal for lack of jurisdiction will be entered</u>.