T.C. Memo. 2008-89



UNITED STATES TAX COURT



EXPLORATORY RESEARCH, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 15082-05X.              Filed April 8, 2008.



     P, a corporation organized under the Iowa
Nonprofit Corporation Act, filed an application with R
for a determination of tax-exempt status, Form 1023,
Application for Recognition of Exemption Under Section
501(c)(3) of the Internal Revenue Code.  P seeks
declaratory relief as to its qualification because of
R's failure to make a determination.  P also petitions
this Court to require the IRS to issue a 5-year advance
determination letter granting tax-exempt status, to set
a start date for this exemption letter, to issue an
injunction preventing revocation of tax-exempt status
for 5 years, and to order a refund of the user fee it
paid for the determination.

     <u>Held</u>:  P failed to exhaust its administrative
remedies, a jurisdictional prerequisite to declaratory
judgment proceedings in the Tax Court relating to the
status of an organization under sec. 501(c)(3), I.R.C.,
as required by sec. 7428(b)(2), I.R.C.  Therefore,
jurisdiction of this Court is not available.

Arthur Anderson (an officer), for petitioner.

William I. Miller, for respondent.

MEMORANDUM OPINION

NIMS, Judge:  Petitioner, Exploratory Research, Inc., brought an action for declaratory judgment and relief pursuant to section 7428(b)(2) and Rule 211 on the ground that respondent had failed to determine whether petitioner qualifies as a tax-exempt organization under section 501(c)(3).  Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code.  Petitioner has also asked this Court to require the IRS to issue a 5-year advance determination letter granting petitioner's application for tax-exempt status; to set the start date of this letter as the first day of the month following this Court's ruling; to grant an injunction preventing respondent from revoking the 5-year advance determination letter until after that 5-year period has run; and to order a refund of the $500 fee petitioner paid for the exempt organization determination letter request.

## Background

Petitioner was organized as a nonprofit corporation in Iowa on September 26, 2004.  On October 21, 2004, it submitted a Form 1023, Application for Recognition of Exemption Under Section

501(c)(3) of the Internal Revenue Code, and other related forms. The application was signed by its sole director, Arthur Anderson. Petitioner also included a copy of its articles of incorporation.

Petitioner's Form 1023 stated that Mr. Anderson would conduct its activities at a "yet undetermined" location. Petitioner listed Mr. Anderson as its sole director and board member. Petitioner's activities would commence after respondent issued a favorable determination letter and after petitioner had received grant funding. Petitioner stated that the time spent on its activities would be "90% Scientific, 5% Educational, and 5% Charitable."

Petitioner said that the research would "explore new ways to use old technology to resolve some of our environmental problems with solid waste recycling of garbage, alternative energy resources, and cleaner fuels." Petitioner listed two topics of research: (1) "Plasma gasification," which would serve to "reduce the amount of solid waste going to the landfill by converting it to energy," and (2) "synthetic fuels," which would reduce pollution and "dependency on foreign oil imports". Petitioner listed its educational purpose as disseminating information to the public through television, radio, or the Internet. Its charitable purpose was "to lessen the burden of government." Petitioner admitted that it had no fundraising

program, but listed potential sources of financial support as "Federal", "State", and "Local (Scott County Regional Authority and Riverboat Development Authority)".

By letter dated March 15, 2005, respondent's Exempt Organizations Specialist, James St.Julien, informed petitioner that he could not determine whether petitioner had met all requirements for exemption. He requested that petitioner send additional information, including a description of the research projects in which petitioner planned to engage, how petitioner would select projects, how the results would be used, and whether petitioner planned to have contract or sponsored research. Additionally, he asked petitioner to state the qualifications of those who would conduct the research. Furthermore, he requested petitioner to alter its board of directors to include members unrelated to Mr. Anderson "to insure that * * * [the] organization will serve public interests".

Petitioner, in a letter dated March 28, 2005, replied to this Internal Revenue Service (IRS) request for additional information. Petitioner, in answering several of the questions related to research activities and criteria, referred back to its original application. Petitioner did add that projects would be selected by the director, Mr. Anderson, "based on subject interest." Petitioner stated that it existed only on paper and had no contracts or grants for research. Petitioner did not

comply with the IRS request to add parties to petitioner's board of directors, stating that neither the Internal Revenue Code nor the regulations required a change to the board of directors. Petitioner stated that Mr. Anderson would be petitioner's sole employee and would earn $400 a week in compensation, with no other benefits. Petitioner attached a proposed budget to the letter, calling it an "educated guess." This budget restated the sources of grant income. Petitioner's costs included attorney's and accountant's fees, office expenses, continuing education for Mr. Anderson, and "project costs."

Mr. St.Julien, in a letter dated April 8, 2005, indicated that he still needed information from petitioner before making a determination on petitioner's application. Mr. St.Julien again asked for a more complete description of the activities petitioner would perform, including the standards, criteria, procedures, and other means adopted for carrying out its activities. Additionally, Mr. St.Julien expressed his concern that petitioner might act in the private interest of Mr. Anderson. He also renewed his request that petitioner add members to its board of directors, asked whether petitioner had adopted a conflict of interest policy, and inquired as to what policies and procedures were in place to ensure that the board of directors was not receiving benefits from petitioner's activities. Finally, he asked petitioner to detail what internal

controls on decisionmaking were in place to prevent petitioner from operating for the private benefit of Mr. Anderson.

Petitioner replied to this letter on April 25, 2005. Petitioner stated that its "goal" was to "develop a process were [sic] garbage is converted into electricity without producing any air pollution or green house gases." Petitioner reiterated that the board of directors (Mr. Anderson) would select projects on the basis of "subject interest". Petitioner offered two examples of the board's (Mr. Anderson's) interests: (1) "Electrical production without global warming from green house gases or air pollution, using a renewable fuel source, like garbage, reducing what goes to the landfill", and (2) "synthetic fuel production to reduce air pollution, global warming, and our dependency on foreign oil imports." Petitioner stated that it would not exert ownership or control of any patents, copyrights, processes, or formulas. Petitioner stated that it had no research facilities, but that it would seek a location for research after it received tax-exempt status and had "successful grant writing." Petitioner admitted that it had no educational programs or workshops. Instead, petitioner said that its educational purpose "might be to provide free information to the public that is beneficial to the public good." Petitioner again refused to alter the composition of its board. Petitioner stated that Mr. Anderson "is the governing body of the organization," and that he "will be

involved in all day-to-day operations of the organization."
Petitioner also listed several "controls" that would prevent Mr.
Anderson from using petitioner for his own purposes, which
included petitioner's articles and bylaws and IRS oversight.
Petitioner also submitted another proposed budget listing under
project costs items including hand tools, meters, gauges, motors,
welding equipment, and "heat resistant materials".  These project
costs were significantly less than those in petitioner's first
proposed budget, which listed no materials.

In a letter dated June 1, 2005, Lois Lerner, Director of
Exempt Organizations Rulings and Agreements, informed petitioner
that the IRS was unable to make a final determination and was
closing petitioner's case.  She instructed petitioner to call if
petitioner had already submitted the information or believed the
letter was sent in error.  She invited petitioner to ask any
questions it had regarding the matter.  Additionally, she advised
petitioner that if the requested information was received within
90 days (by August 30, 2005), the case would be reopened without
an additional fee.  She also stated that her office had contacted
petitioner's attorney, Mrs. Olsen, and explained to her that
petitioner's responses were insufficient and that petitioner
"does not meet the operational test and appears to be control
[sic] by and for the one person board, officer, researcher and

staff." She invited petitioner to make a "sufficient response" to the April 8 letter.

Petitioner made no further contact with respondent and filed its petition seeking a declaratory judgment on August 15, 2005.

### Discussion

Where the Secretary has failed to make a determination of an entity's qualification as a tax-exempt entity, this Court has jurisdiction to provide declaratory relief under section 7428(b)(2). This Court may issue a declaratory judgment once the organization involved has exhausted all administrative remedies and 270 days have passed since the date the application was filed. Sec. 7428(b)(2); Rule 210(c); <u>Natl. Paralegal Inst. Coal. v. Commissioner</u>, T.C. Memo. 2005-293.

An applicant has not exhausted his administrative remedies until the applicant has: (1) Filed a substantially completed Form 1023, (2) timely submitted all additional information requested to perfect the application, and (3) exhausted all administrative appeals available within the IRS. See sec. 601.201(n)(7)(iv), Statement of Procedural Rules; Rev. Proc. 90-27, sec. 12.01, 1990-1 C.B. 514, 517, superseded by Rev. Proc. 2007-52, sec. 10.02, 2007-30 I.R.B. 222, 231.

Section 601.201(n)(7)(i), Statement of Procedural Rules, provides that a "substantially completed application Form 1023" is one that--

(a) Is signed by an authorized individual;

(b) Includes an Employer Identification Number (EIN) or a completed Form SS-4, Application for Employer Identification Number;

(c) Includes a statement of receipts and expenditures and a balance sheet for the current year and the three proceeding years or the years the organization was in existence, if less than four years (if the organization has not yet commenced operations, a proposed budget for two full accounting periods and a current statement of assets and liabilities will be acceptable);

(d) Includes a statement of proposed activities and a description of anticipated receipts and contemplated expenditures;

(e) Includes a copy of the organizing or enabling document that is signed by a principal officer or is accompanied by a written declaration signed by an officer authorized to sign for the organization certifying that the document is a complete and accurate copy of the original; and

(f) If the organization is a corporation or unincorporated association and it has adopted bylaws, includes a copy that is signed or otherwise verified as current by an authorized officer.  * * *

If the application does not contain all of these items, it may be returned to the applicant for completion.  Id.

The parties differ as to whether petitioner described its proposed activities in sufficient detail.  Where an organization has not yet commenced activities, proposed activities must be described in sufficient detail in order to establish that the activities further an exempt purpose.  Section 601.201(n)(1)(ii), Statement of Procedural Rules, provides:

> A mere restatement of purposes or a statement that proposed activities will be in furtherance of such purposes will not satisfy these requirements. The organization must fully describe the activities in which it expects to engage, including the standards, criteria, procedures, or other means adopted or planned for carrying out the activities; the anticipated sources of receipts; and the nature of contemplated expenditures. * * *

If an application fails to meet these requirements, the application may be returned to the applicant with a request for additional information. Sec. 601.201(n)(1)(iii), Statement of Procedural Rules.

Therefore, where the proposed activities are not described in sufficient detail to permit final determination of an application and the applicant has not submitted material sufficient to perfect its application, the applicant has not exhausted its administrative remedies. A letter from the IRS stating that consideration of an application is closed without a final determination is not an adverse determination that allows the applicant to invoke this Court's jurisdiction. See Natl. Paralegal Inst. Coal. v. Commissioner, supra (holding that this Court lacked jurisdiction where the applicant had received a letter closing its case).

Respondent determined that petitioner had not described its proposed activities in sufficient detail to allow respondent to make a determination on petitioner's application. We agree.

Petitioner's responses to respondent's inquiries, though timely, did not offer sufficient detail as to petitioner's planned activities. In petitioner's application and subsequent answers to respondent's inquiries, petitioner merely stated goals such as developing a process to convert garbage into electricity without producing airborne pollution. Petitioner gave little indication as to what activities it would perform in furtherance of this goal. Petitioner stated that it would find "new ways to use old technology" to solve environmental problems. The only identifiable process petitioner listed is "plasma gasification," and petitioner provided no explanation of the process or the activities it would perform to develop this process. This does not qualify as a full description of petitioner's planned activities.

Additionally, we cannot deduce any concrete activity from petitioner's proposed budget or its list of materials petitioner plans to purchase. The list contains mostly basic hardware materials, measuring tools, and electronic equipment. Petitioner at no time elaborates how it will use these materials in its activities or experiments, and the ordinary uses of these materials are far too many to allow us to form any conclusion as to the activities petitioner would undertake.

Petitioner also did not disclose any concrete standards, criteria or procedures it would employ in the selection and

implementation of its functions.  Petitioner stated that any experiments would be chosen and conducted by Mr. Anderson, solely on the basis of his "interest".  From that we infer that petitioner has not established any meaningful criteria by which it would select future activities, other than the unbridled discretion of Mr. Anderson.

Because petitioner's application lacked proposals for tangible facilities, detailed plans, and criteria for selecting activities and because petitioner was controlled completely by Mr. Anderson, respondent rightfully concluded that he required additional information before issuing a determination on petitioner's status.  Throughout the period during which respondent requested information, petitioner had ample opportunity to develop concrete plans for activities it would perform.  Respondent advised petitioner twice by letter to give sufficient details of its planned activities.  These notifications were prompt and detailed.  Despite the opportunity, petitioner did little more than reiterate its objectives from the original application.  Even after respondent notified petitioner that consideration of its application was closed, petitioner still had an additional opportunity to renew the application by developing a detailed explanation of its planned activities. Petitioner chose not to do so.  Because petitioner's supplemented application fails to describe its proposed activities in

sufficient detail and fails to disclose meaningful standards and criteria by which it will select future activities, petitioner has not met the requirements for a "substantially completed Form 1023." As a result, respondent's failure to issue a determination letter was proper, and jurisdiction of this Court under section 7428(b)(2) is not available.

Petitioner nonetheless argues that respondent had ample information about petitioner's activities. In support of that argument, petitioner states that respondent was able, in his pleadings before this Court, to describe petitioner's activities. On the contrary, respondent's pleadings at most summarize petitioner's own descriptions, and as a result suffer the same lack of detail as petitioner's descriptions. From this we cannot infer that respondent had sufficient knowledge of petitioner's proposed activities to warrant a determination.

Petitioner also argues that respondent has conceded this Court's jurisdiction by failing to file a motion to dismiss for lack of jurisdiction within 45 days of the filing of the original petition. This is an incorrect application of Rule 213. The Tax Court is a court of limited jurisdiction and may only exercise jurisdiction to the extent granted by Congress. Commissioner v. Gooch Co., 320 U.S. 418 (1943). Thus, while Rule 213 provides a 45-day limitation on the Commissioner for moving on a petition, a motion to dismiss may be made at any time. French & Co. v.

Commissioner, 10 B.T.A. 665, 671 (1928); Hodges v. Commissioner, T.C. Memo. 1987-340. Additionally, this Court can, on its own motion, dismiss for lack of jurisdiction. See, e.g., Smith v. Commissioner, 124 T.C. 36 (2005); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). As a result, the Commissioner cannot concede this Court's jurisdiction.

Furthermore, respondent did not concede that petitioner exhausted its administrative remedies. Respondent did not issue a determination on petitioner's application. None of respondent's correspondence with petitioner indicates that he believed the administrative record was complete enough to make a determination. In his answer, respondent specifically denied petitioner's allegation that it had exhausted its administrative remedies. Respondent has not conceded that petitioner exhausted its administrative remedies.

We hold that petitioner has not submitted a substantially completed Form 1023 as defined by section 601.201(n)(7)(i), Statement of Procedural Rules. As a result, petitioner has not exhausted its administrative remedies, and this Court does not have jurisdiction to issue declaratory relief under section 7428(b)(2). Consequently, this Court cannot grant any of the additional relief that petitioner requests. In reaching this

conclusion, we have considered all arguments made by the parties, and to the extent not discussed above, we find them irrelevant, without merit, or both.

To reflect the foregoing,

<u>An order of dismissal</u>

<u>for lack of jurisdiction will</u>

<u>be entered</u>.