T.C. Memo. 2009-261

UNITED STATES TAX COURT

OHIO DISABILITY ASSOCIATION, AN OHIO NON-PROFIT CORPORATION,
Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25436-07X.          Filed November 12, 2009.

<u>Charles S. Lineback</u>, for petitioner.

<u>Patricia Pierce Davis</u>, for respondent.

MEMORANDUM OPINION

ARMEN, <u>Special Trial Judge</u>:  Petitioner, Ohio Disability
Association, An Ohio Non-Profit Corporation, brought this action
for declaratory judgment and relief pursuant to section
7428(a)(2) and Rule 211 on the ground that respondent failed to
make a determination regarding whether petitioner qualifies as a

tax-exempt organization under section 501(c)(3).[1]  The issues for decision are whether petitioner will operate exclusively for charitable purposes within the meaning of section 501(c)(3) and whether no part of its net earnings will inure to the benefit of a private shareholder or individual.

## Background

This case was submitted fully stipulated pursuant to Rule 122.  Pursuant to Rule 217(b), the parties filed with this Court the administrative record relating to the request for a determination that petitioner qualifies as an exempt organization.  The facts in the administrative record are assumed to be true for purposes of this proceeding.  The record shows that petitioner has exhausted its administrative remedies.  It is noted that the administrative record is not a model of clarity and its imperfection has complicated our fact-finding.

A.  Charles S. Lineback

Charles S. Lineback (Mr. Lineback) is petitioner's counsel in the instant action.  Mr. Lineback formed petitioner as an Ohio non-profit corporation on March 16, 2004.  Petitioner has not yet begun to operate.

Mr. Lineback is a licensed attorney in the State of Ohio as well as a licensed certified public accountant (C.P.A.) in both

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

the State of Ohio and the State of Florida. During his 28 years as an attorney Mr. Lineback has managed attorney trust accounts. Mr. Lineback has also passed the exam for licensure as an insurance agent; however, he has never sold insurance.

B. Articles of Incorporation and Bylaws

Petitioner's articles of incorporation filed March 16, 2004, state that petitioner was "formed for the purpose of establishing and managing a pooled trust authorized by" 42 U.S.C. section 1396p(d)(4)(C) and Ohio Admin. Code 5101:1-39-27.1(C)(3)(c) and that the corporation is authorized to engage in any act permitted by section 501(c)(3). On January 18, 2006, the articles of incorporation were amended to state the purpose of the corporation as follows:

> (1) This non-profit corporation is organized exclusively for charitable purposes within the meaning of section 501(c)(3) * * *, including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under section 501(c)(3) * * *.
>
> (2) Upon the winding up and dissolution of this non-profit corporation, after paying or adequately providing for the debts and obligations of this non-profit corporation, the remaining assets shall be distributed for one or more exempt purposes within the meaning of section 501(c)(3) * * *.
>
> (3) No part of the net earnings of this non-profit corporation shall inure to the benefit of, or be distributable to, any of its members, trustees, officers or other private persons, except that this non-profit corporation shall be authorized to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the exempt purposes.

(4) No substantial part of the activities of this non-profit corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation, and this non-profit corporation shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of or in opposition to any candidate for public office.

(5) Notwithstanding any other provision of these articles, this non-profit corporation shall not carry on any other activities not permitted to be carried on (a) by a corporation exempt from [F]ederal income tax under section 501(c)(3) * * *, or (b) by a corporation, contributions to which are deductible under section 170(c)(2) * * *.

Petitioner's bylaws were adopted on January 18, 2006. The bylaws do not include any statements regarding the specific purposes or objectives of the corporation. The bylaws make reference to the incorporators of the corporation as the initial members.[2] The bylaws further describe the process for calling member meetings and voting procedures for the election of the board of directors and passing on business matters.

C. <u>Board of Directors, Officers, and Members</u>

Petitioner's articles of incorporation list Mr. Lineback as the sole incorporator and the bylaws provide that Mr. Lineback is the sole director. The record demonstrates that Mr. Lineback is also the president and sole officer and employee and will serve without compensation. According to the bylaws, Mr. Lineback is also the only member of the corporation.

---

[2] The bylaws appear to equate members with shareholders.

D. <u>Petitioner's Application for Exemption and Followup Correspondence</u>

1. <u>Application for Recognition of Exemption</u>

Mr. Lineback signed petitioner's Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code (application), and dated it February 3, 2006. On the application Mr. Lineback stated:

> This corporation is formed to assist the poor and needy, as defined by Medicaid standards, that is, a person who has one thousand five hundred dollars or less in countable assets. Our activity will <u>not</u> be primarily fundraising but rather managing a non-profit 'Pooled Trust' agreement.

The application also stated: "The Ohio Disability Association will reach out to the poorest of the disabled. There will be no minimums and our investments will be limited to government insured checking and savings accounts." The application further stated that the corporation would "provide 'Pooled Trust' services to impoverished individuals who have been declared disabled by the Social Security Administration" who also "must be applying for Medicaid benefits". The application explained that services will be limited to individuals who are 65 years of age or older, blind, or disabled.

2. <u>Requests for Additional Information</u>

On August 17, 2006, an exempt organization specialist for respondent sent petitioner a letter requesting additional information under penalties of perjury including: (1) Whether

petitioner would modify the board of directors to include unrelated individuals selected from the community the corporation will serve; (2) a complete description of all compensation paid to Mr. Lineback; (3) a description of the organization's staff, including their experience and qualifications; (4) a copy of the pooled trust master agreement; and (5) any informational materials about the organization and/or the pooled trust that would be distributed to potential applicants.

Mr. Lineback replied to respondent's request for additional information in the form of two letters. In the letters Mr. Lineback replied that: (1) The board of directors would not be modified and instead he provided an amended application designating petitioner as a nonoperating private foundation; (2) the compensation "to be paid to Charles Lineback = None"; (3) "the organization's staff is limited to myself"; (4) the pooled trust master agreement had not yet been prepared as the "non-profit status, i.e., [an IRS] determination letter, is a prerequisite to signing the trust" citing Ohio Admin. Code 5101:1-39-27.1(C)(3)(c) (2006) and providing a sample pooled trust; and (5) there are no informational materials about the organization and/or the pooled trust.

Following this initial exchange of letters, Mr. Lineback and respondent exchanged numerous additional letters and faxes. Respondent's letters repeatedly requested the same or similar

information, and at times the inquiries were not coherent. However, it was clear that respondent desired additional details about petitioner's proposed activities. Although Mr. Lineback responded to respondent's requests for additional information, the answers were often curt and, for the most part, referred respondent back to prior letters and the initial application. Mr. Lineback's letters also included conclusory statements that petitioner had satisfied the requirements for tax-exempt status and stated that a favorable determination letter should be issued.

Respondent's letters requested additional information regarding, inter alia, the implementation of the conflict of interest policy, the qualifications and experience of Mr. Lineback, the modifications petitioner would make to the sample pooled trust, the procedures for managing the pooled trust fund, the eligibility criteria for the trust beneficiaries, and the standards by which disbursements from the trust would be approved.

In response to respondent's question regarding how the conflict of interest policy would be implemented, petitioner stated: "The Conflict of Interest Policy was copied directly from Appendix A of the Form 1023 instructions."

Regarding Mr. Lineback's qualifications and experience, petitioner stated: "I have 32 years experience as a CPA. I

suggest that if I am legally qualified to audit such an entity, then I am also qualified to do the bookkeeping."

With respect to the modifications to the sample pooled trust, petitioner stated: "The document must be converted to 6th grade plain English for easy comprehension. The fundamental changes are that fees will be limited to $10.00 per year and no interest will be paid."

In response to a question regarding the procedures for managing the pooled trust, petitioner referred respondent back to its original application, which stated:

> Our director, Charles Lineback, will be directly responsible for conducting the charitable activities which will consist of adopting a standard Pooled Trust master agreement and managing the same * * *. He will serve without compensation. This will involve accepting applicant sub-trust joinder agreements, making deposits and approving/rejecting requests for disbursements as well as reconciling accounts on a monthly basis. The physical bank account(s) will operate in a manner similar to attorney trust accounts.

With respect to bookkeeping procedures, petitioner stated, "there are no sub-accounts and no sub-trusts." Petitioner further explained: "there is a single (one) trust fund with a separate account (book entry) maintained for each beneficiary."

Regarding the criteria for trust beneficiary applicants, petitioner indicated that in addition to there being no minimums, there would be no maximum limitation per account and no maximum limitation on the level of income or assets owned by the individual that may be transferred to the trust. Petitioner

further stated that the trust is not prohibited from managing accounts on behalf of the director's relatives or clients (or relatives of clients).

Regarding disbursements to beneficiaries, petitioner stated:

Beneficiaries <u>cannot</u> <u>make</u> <u>claims</u>.  Beneficiaries can request that certain payments be made, such as an upgrade from a semi-private room to a private room.  The criterion generally, is whether the service is covered by an existing social program such as Medicaid.  Please refer to the Medicaid Providers manual for a complete list of Medicaid covered services.[3]

Despite the extensive correspondence between respondent and petitioner, respondent failed to issue a determination letter. On November 5, 2007, petitioner filed a petition for declaratory judgment with this Court.  The petition was filed more than 1-1/2 years after petitioner filed its initial application for exemption.  By Order of the Court dated February 20, 2009, it was determined that this Court has jurisdiction because petitioner had exhausted the administrative remedies available to it within the Internal Revenue Service.  See sec. 7428(b); see also Rules 210(c)(4), 211(g)(4).

Discussion

A.  <u>Declaratory Judgment</u>

A declaratory judgment action pursuant to section 7428(a)(2) is commenced on the ground that the Commissioner failed to make a determination with respect to a taxpayer's request for initial

---

[3]  The administrative record does not include any such manual.

qualification as a tax-exempt organization.  See generally Rules 210-218.  This Court may issue a declaratory judgment once the organization involved has exhausted all administrative remedies and 270 days have passed since the date the application was filed.  Sec. 7428(b)(2); Rule 210(c); Natl. Paralegal Inst. Coal. v. Commissioner, T.C. Memo. 2005-293.  Disposition of a declaratory judgment action concerning the initial qualification of an exempt organization is ordinarily made on the basis of the administrative record.  Rule 217(b); Church in Boston v. Commissioner, 71 T.C. 102, 105 (1978); Houston Lawyer Referral Serv., Inc. v. Commissioner, 69 T.C. 570, 573 (1978).

B.  Whether Petitioner Is Entitled to Exempt Status

Tax exemption is a matter of legislative grace, and an organization seeking an exemption must prove that it "comes squarely within the terms of the law conferring the benefit sought."  Nelson v. Commissioner, 30 T.C. 1151, 1154 (1958); see also Fla. Hosp. Trust Fund v. Commissioner, 103 T.C. 140, 153 (1994), affd. 71 F.3d 808 (11th Cir. 1996).

Pursuant to section 501(a), an organization described in section 501(c)(3) shall be exempt from Federal income tax.  To qualify as an exempt organization under section 501(c)(3), an organization must satisfy all of the requirements stated therein, specifically including the requirements that the corporation must be both organized and operated exclusively for one or more exempt

purposes, and no part of the net earnings may inure to the benefit of any private shareholder or individual.  A failure to satisfy any one of the requirements is fatal to qualification. Columbia Park & Recreation Association v. Commissioner, 88 T.C. 1, 13 (1987), affd. without published opinion 838 F.2d 465 (4th Cir. 1988); see sec. 1.501(c)(3)-1(a)(1), Income Tax Regs.

An organization may seek tax-exempt status before it begins operations, but the administrative record must set forth sufficient detail about its prospective operations to provide the basis for the granting of exemption.  Peoples Prize v. Commissioner, T.C. Memo. 2004-12 (citing La Verdad v. Commissioner, 82 T.C. 215, 219 (1984), and World Family Corp. v. Commissioner, 81 T.C. 958, 964 (1983)).  Without adequate information, the denial of exemption is warranted.  See Church in Boston v. Commissioner, supra; Gen. Conference of the Free Church of Am. v. Commissioner, 71 T.C. 920, 929 (1979).

Petitioner has, for the most part, provided only generalizations and conclusory statements in response to repeated requests by respondent for more detail regarding its proposed activities.  Such generalizations do not demonstrate that petitioner qualifies for exemption.  Peoples Prize v. Commissioner, supra; see also La Verdad v. Commissioner, supra at 221; World Family Corp. v. Commissioner, supra at 966.

Respondent has conceded that petitioner is organized for exempt purposes but contends that petitioner has failed to demonstrate that it will be operated exclusively for exempt purposes and that no earnings will inure to the benefit of a private shareholder or individual. Petitioner maintains that the administrative record demonstrates it will operate exclusively for exempt purposes and no earnings will inure to the benefit of a private shareholder or individual. For reasons discussed below, we agree with respondent.

1. Whether Petitioner Is Operated Exclusively for Charitable Purposes

Whether an organization is operated exclusively for charitable purposes is often referred to as the operational test. Sec. 1.501(c)(3)-1(c)(1), Income Tax Regs. An organization will satisfy the operational test if it engages primarily in activities which accomplish one or more of the exempt purposes in section 501(c)(3). Id. Petitioner listed charitable purposes as its section 501(c)(3) exempt purpose. Charitable means, inter alia, relief of the poor and distressed or of the underprivileged. Sec. 1.501(c)(3)-1(d)(2), Income Tax Regs. Elderly and disabled individuals have been recognized by the Commissioner as charitable classes. See Rev. Rul. 79-19, 1979-1 C.B. 195; Rev. Rul. 76-244, 1976-1 C.B. 155. The individuals for whom petitioner purports to manage the pooled trust are considered members of charitable classes. However, this fact

alone does not demonstrate that petitioner will operate exclusively for exempt purposes.

Petitioner has described its purpose as establishing and managing a pooled trust to assist the poor and needy as defined by Medicaid standards and as provided for in Ohio Admin. Code 5101:1-39-27.1(C)(3) (2006) and 42 U.S.C. 1396p(d)(4)(C) (2006 and Supp. 2009). "Medicaid provides health coverage for low-income children and adults, medical and long-term care coverage for people with disabilities, and assistance with health and long-term care expenses for low-income seniors." http://www.familiesusa.org/issues/medicaid/. Although Medicaid is jointly funded by the Federal and State governments, each State administers its own program. Id. In general, under Federal and State law, funds in a trust and payments made therefrom are considered in determining eligibility for programs such as Medicaid. 42 U.S.C. 1396p(d)(3) (2006 and Supp. 2009); Ohio Admin. Code 5101:1-39-27.1(C) (2006). However, under Ohio Admin. Code 5101:1-39-27.1(C)(3) (2006) certain trusts, including pooled trusts, are not considered in determining eligibility.

In order to qualify as a pooled trust a trust must satisfy all of the following provisions of Ohio Admin. Code 5101:1-39-27.1(C)(3)(c) (2006):

> (i) The trust contains the assets of an individual of any age who is disabled as defined in rule 5101:1-39-03 of the Administrative Code.

(ii) A separate account is maintained for each beneficiary of the trust but, for purposes of investment and management of funds, the trust pools the funds in these accounts.

(iii) Accounts in the trust are established by the individual, the individual's parent, grandparent, or legal guardian, or a court solely for the benefit of individuals who are disabled.

(iv) To the extent that any amounts remaining in the beneficiary's account upon the death of the beneficiary are not retained by the trust, the trust pays to the state the amount remaining in the account equal to the total amount of medical assistance paid on behalf of the beneficiary. To meet this requirement, the trust must include a provision specifically providing for such payment.

(v) Cash distributions to the individual are counted as unearned income. All other distributions from the trust are treated under the rules governing in-kind income.

(vi) Transfers of assets to a pooled trust are not subject to the improper transfer provisions in rule 5101:1-39-07 of the Administrative Code. However, assets held prior to the transfer to this trust are countable assets and/or income.

Similar to Ohio Admin. Code 5101:1-39-27.1 (2006), 42 U.S.C. section 1396p(d)(4)(C) (2006 and Supp. 2009) provides that a trust containing the assets of a disabled individual is not considered in determining Medicaid eligibility if:

(i) The trust is established and managed by a nonprofit association.

(ii) A separate account is maintained for each beneficiary of the trust, but, for purposes of investment and management of funds, the trust pools these accounts.

(iii) Accounts in the trust are established solely for the benefit of individuals who are disabled * * *

by the parent, grandparent, or legal guardian of such individuals, by such individuals, or by a court.

(iv) To the extent that amounts remaining in the beneficiary's account upon the death of the beneficiary are not retained by the trust, the trust pays to the State from such remaining amounts in the account an amount equal to the total amount of medical assistance paid on behalf of the beneficiary under the State plan * * *.

Although petitioner states that it will establish and manage a pooled trust under the aforementioned provisions, petitioner has not sufficiently described its proposed activities to demonstrate that it will operate exclusively for exempt purposes. Mr. Lineback's responses to respondent's requests for additional information failed to supplement the initial application or clarify petitioner's purpose and proposed activities, but rather were mere repetitions of the statements in the initial application. Petitioner indicated that the pooled trust would be managed similar to an attorney trust account but did not describe specific procedures for managing the pooled trust. Petitioner stated only that Mr. Lineback's experience as an attorney and C.P.A. qualified him to manage the pooled trust by adopting the master pooled trust agreement, accepting applicant subtrust joinder agreements, making deposits and approving/rejecting requests for disbursements as well as reconciling accounts on a monthly basis.

Most notably, when requested to provide the pooled trust master agreement, petitioner provided a sample pooled trust and

indicated that respondent's favorable determination letter was necessary prior to signing the trust agreement. However, petitioner was not precluded from submitting the pooled trust agreement that Mr. Lineback intended to sign after receipt of the favorable determination letter. The sample pooled trust is just that, a sample.

Petitioner indicated that the sample pooled trust would be modified to be written in "6th grade plain English" and include provisions to limit fees to $10 per year and state that no interest will be paid. But because the pooled trust in the record is a sample, this Court cannot rely on it as indicative of the actual pooled trust provisions.

Petitioner also did not clearly state the criteria for accepting applicants and making disbursements. Petitioner merely stated that Mr. Lineback would have the authority to accept applicants with no monetary minimums or maximums, and he would make disbursements for services not covered by Medicaid referring to a "Medicaid Providers manual".

In sum, the generalizations made by petitioner do not provide sufficient detail to determine that petitioner will be operated exclusively for charitable purposes. See, e.g., La Verdad v. Commissioner, 82 T.C. at 219-220.

2. Whether Any Part of the Net Earnings Inures to the Benefit of a Private Shareholder or Individual

An organization is not operated exclusively for one or more of the exempt purposes in section 501(c)(3) unless it serves a public rather than private interest. Sec. 1.501(c)(3)-1(d)(1), Income Tax Regs. To satisfy this requirement, the organization must not be organized and operated for the benefit of private interests, such as those of its creator or the creator's family. Am. Campaign Acad. v. Commissioner, 92 T.C. 1053, 1065-1067 (1989).

The Commissioner has ruled that an organization will not be denied tax-exempt status merely because the organization is controlled by one individual. Rev. Rul. 66-219, 1966-2 C.B. 208. However, such a situation provides an obvious opportunity for abuse and calls for an open and candid disclosure of the taxpayer's organization and operations. Bubbling Well Church of Universal Love, Inc. v. Commissioner, 74 T.C. 531, 535 (1980), affd. 670 F.2d 104 (9th Cir. 1981). If such disclosure is not made, the logical inference is that the facts, if disclosed, would show that the taxpayer fails to meet the requirements of section 501(c)(3). Id. (citing Founding Church of Scientology v. United States, 188 Ct. Cl. 490, 412 F.2d 1197, 1201 (1969)).

The record demonstrates Mr. Lineback is the sole director, officer, employee, and member. Thus he is vested with all of the decisionmaking power within petitioner's organization. Although

petitioner has a stated conflict of interest policy and the articles of incorporation state that there will be no private inurement, there are no procedures or personnel in place to ensure that either the stated policy will be followed or private inurement will not occur.  Although the bylaws establish procedures for member meetings and voting, Mr. Lineback is the only member.  Further, petitioner states that Mr. Lineback will serve without compensation; however, the articles of incorporation state that "this non-profit corporation shall be authorized to pay reasonable compensation for services rendered".  In sum, the record does not demonstrate that there is oversight to prevent the organization from being operated to benefit Mr. Lineback or his legal and accounting practices.

C.  Conclusion

The administrative record does not permit us to conclude that petitioner will operate exclusively for exempt purposes and that no part of the net earnings will inure to the benefit of a private shareholder or individual.  Our holding, however, does not preclude petitioner from filing a new application for exemption.  See Houston Lawyer Referral Serv., Inc. v. Commissioner, 69 T.C. at 577-578.

To reflect the foregoing,

Decision will be entered for respondent.